UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELIZABETH B.,

                          Plaintiff,

v.                                                        8:21-cv-00100 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

SCHNEIDER & PALCSIK                    MARK A. SCHNEIDER, ESQ.
  *Counsel for Plaintiff*
57 Court Street
Plattsburgh, NY 12901

SOCIAL SECURITY ADMINISTRATION        NATASHA OELTJEN, ESQ.
OFFICE OF THE GENERAL COUNSEL
  *Counsel for Defendant*
6401 Security Boulevard
Baltimore, MD 21235

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>MEMORANDUM-DECISION AND ORDER</u>

Elizabeth B. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her applications for supplemental security income ("SSI") and

disability insurance benefits ("DIB").  (Dkt. No. 1.)  Pursuant to 28 U.S.C. § 636(c), the parties

consented to the disposition of this case by a Magistrate Judge.  (Dkt. Nos. 4, 5.)  Both parties

filed briefs, which the Court treats as cross-motions for judgment on the pleadings under Federal

Rule of Civil Procedure Rule 12(c) in accordance with General Order 18.  (Dkt. Nos. 14, 22.)

With permission from the Court, Plaintiff filed a reply brief.  (Dkt. No. 25.)  For the reasons discussed below, Plaintiff's motion is denied and Defendant's motion is granted.  The Commissioner's decision is affirmed.

## I.    BACKGROUND

Plaintiff was born in 1984, has an associate's degree, and is a CNA.  (Administrative Transcript at 1576, 1579, , 2264, 2266.[1])  She has some prior work experience as a "nurse assistant" and "home attendant."  *Id*. at 1372.

On April 4, 2016, Plaintiff filed applications for SSI and DIB.  *Id*. at 512-21.  Her alleged disability onset date is February 7, 2016.  *Id*.  On June 14, 2016, her applications were denied, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  *Id*. at 439, 440, 458.  On April 25, 2016, Plaintiff, represented by counsel, appeared before ALJ Patrick Morrison.  *Id*. at 372-412.  On August 7, 2016, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  *Id*. at 136-45.  On September 4, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  *Id*. at 1472-77.  Thereafter, Plaintiff timely sought judicial review in this Court.  *Id*. at 1479-81.

On April 17, 2020, the parties stipulated to remand Plaintiff's case for further proceedings.  *Id*. at 1483-84.  On June 25, 2020, the Appeals Council remanded the claims to an ALJ to update the record as needed, further evaluate Plaintiff's physical impairments at step two,

---

[1]  The Administrative Transcript is found at Dkt. Nos. 11 and 21.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.  Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

further consider Plaintiff's residual functional capacity ("RFC"), and, if necessary, obtain evidence from a medical expert.  *Id*. at 1486-90.

On October 21, 2020, ALJ David Romeo conducted a hearing where both Plaintiff, represented by counsel, and a vocational expert testified.  *Id*. at 2258-99.  On December 3, 2020, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  *Id*. at 1357-74.  On June 25, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  *Id*. at 1486-92.  This action followed. (Dkt. No. 1.)

## II.  LEGAL STANDARDS

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, a court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Determination of Disability**[2]

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under the five-step sequential evaluation process, the ALJ determines:

---

[2]  While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III.   THE ALJ'S DECISION

After reviewing the procedural history of Plaintiff's applications and stating the applicable law, the ALJ found she met the insured status requirements through March 31, 2020, and had not engaged in substantial gainful activity since February 7, 2016, the alleged onset date. *Id*. at 1357-60. At step two, the ALJ determined Plaintiff has the following severe impairments:

> fibromyalgia, migraine headaches, cervicalgia, chronic pain syndrome, insomnia, hypersomnia, SI joint arthritis, lumbago with sciatica, restless leg syndrome, lumbar spondylosis, status post-traumatic brain injury, major depressive disorder, opioid, tobacco, and cannabis dependence, post-traumatic stress disorder [("PTSD")], bipolar disorder, panic disorder, and attention-deficit disorder.

*Id*. at 1360.

At step three, the ALJ found Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *Id*. at 1360. Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 11.02 (epilepsy), 11.14 (peripheral neuropathy), 11.18 (traumatic brain injury), 12.02 (neurocognitive disorders), 12.04 (depressive,

bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.11

(neurodevelopmental disorders), 12.15 (trauma-and stressor-related disorders), 14.06

(undifferentiated and mixed connective tissue disease), and 14.09 (inflammatory arthritis). *Id*.

Additionally, in accordance with SSR 12-2p, the ALJ considered Plaintiff's fibromyalgia in

combination with all her other impairments, as there is no listing that specifically addresses this

condition. *Id*.

Next, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to

perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except:

> she can never climb ropes, ladders, or scaffolds. The claimant can
> occasionally climb ramps and stairs, balance, stoop, kneel, crouch,
> and crawl. She can frequently reach, handle, finger, and feel with
> both upper extremities. The claimant should never be exposed to
> high, exposed places or moving mechanical parts. She can tolerate
> occasional exposure to weather, extreme heat and cold, wetness,
> humidity, vibration, and atmospheric conditions. The claimant can
> tolerate a moderate noise intensity level, as defined in the
> DOT/SCO. She can also tolerate occasional exposure to light
> brighter than that typically found in an indoor work environment,
> such as an office or retail store. Mentally, the claimant can
> understand, remember and carry out simple instructions and make
> simple work-related decisions. She can sustain an ordinary routine
> without special supervision and work at a consistent pace
> throughout the workday, but not at a production-rate pace, where
> each task must be completed within a strict time deadline. The
> claimant can tolerate occasional interaction with coworkers,
> supervisors and the public. She can tolerate occasional changes in
> the work setting. The claimant can also tolerate a low level of
> work pressure, which is defined as work not requiring
> multitasking, very detailed job tasks, significant independent
> judgment, very short deadlines, or teamwork in completing job
> tasks.

*Id*. at 1365.

At steps four and five of the sequential evaluation, based upon the RFC, the Medical

Vocational Guidelines, and the testimony of a vocational expert, the ALJ determined Plaintiff

was unable to perform any past relevant work; however, there were jobs that existed in

significant numbers in the national economy Plaintiff could perform.  *Id*. at 1372-74.

Thus, the ALJ determined Plaintiff has not been under a disability, as defined in the

Social Security Act, from April 4, 2016, through the date of decision.  *Id*. at 1374.

## IV.    ARGUMENTS

Plaintiff argues the ALJ failed to find her *per se* disabled under Listings 12.04, 12.06, and

12.15 and improperly assessed the medical opinions of Joshua Frank, M.D., her treating, board-

certified psychiatrist.  (Dkt. No. 14 at 26-31; Dkt. No. 25 at 5-7.)  Plaintiff contends she is unable

to perform any work because of her combination of fibromyalgia, bipolar disorder, ADHD,

depression, anxiety with panic attacks, PTSD, insomnia, inflammatory arthritis, carpal tunnel

syndrome, migraine headaches, pain, Reynaud's syndrome, traumatic brain injury, and side

effects from medications.  (Dkt. No. 14 at 32-35.)  Lastly, Plaintiff maintains the ALJ erred in

only crediting her testimony about her activities, but not about her limitations.  (Dkt. No. 25 at 7-

10.)  The Commissioner responds the ALJ properly evaluated the opinion evidence regarding

Plaintiff's mental impairments, properly considered Plaintiff's impairments in combination, and

supportably concluded she could perform a range of light, unskilled work.  (Dkt. No. 22 at 6-24.)

## V.    DISCUSSION

### A.    Substantial Evidence Supports the ALJ's Step Three Determination

#### 1.  Legal Standards

At step three of the sequential evaluation, the ALJ must determine whether the

individual's severe impairment meets or equals the criteria of any impairment listed in Appendix

1 of the regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d); *see* 20 C.F.R. §

404 Subpt. P, App. 1.  If an individual's impairment, or combination of impairments, matches

the requirements of the relevant listing, then the individual is disabled.  *Id*. §§ 404.1520(d), 416.920(d).  To meet a listing, the individual's impairment "must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

At issue are Listings 12.04, 12.06, and 12.15.  (Dkt. No. 14 at 26-31.)  To meet these Listings, a claimant must satisfy the diagnostic criteria described in "paragraph A," as well as the "paragraph B" criteria by establishing either an extreme limitation in one, or a marked limitation in two, of the following domains of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; or (4) adapting and managing oneself.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 12.15.

Alternatively, a claimant must satisfy the requirements of "paragraphs A" and "paragraph C."  *Id*.  To meet "paragraph C" criteria, the individual must present a "medically documented history of the existence of the disorder over a period of at least 2 years," with both "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder," and "marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life."  *Id*.

### 2.  Application

Plaintiff argues she is disabled under Listings 12.04, 12.06, and 12.15.  (Dkt. No. 14 at 26-31.)  As part of his step three analysis, the ALJ determined the record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitations required to meet or equal the criteria of any listed impairment.  (T. at 1360.)  The ALJ further noted that no

acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equal a listed impairment. *Id*. The ALJ also evaluated Plaintiff's mental disorders pursuant to 20 C.F.R. §§ 404.1520a and 416.920a. *Id*. at 1361-65.

In determining whether she satisfied the "paragraph B" criteria, the ALJ concluded, based upon substantial evidence on the record, Plaintiff has mild limitations in the domain of understanding, remembering, and applying information; moderate limitations in interacting with others; moderate limitations in maintaining concentration, persistence, or pace; and moderate limitations in adapting or managing herself. *Id*. at 1364. The ALJ then determined Plaintiff did not satisfy the paragraph C criteria, explaining the record does not establish she has only marginal adjudgment. *Id*. In making this finding, the ALJ thoroughly discussed the extensive evidence of record. *Id*. at 1360-65.

To that end, the ALJ relied on evidence of Plaintiff's wide range of daily activities including caring for her daughter, which entailed getting her ready for school, preparing her meals, helping with her hygiene, playing with her, picking-up after school, helping with school work, and getting her ready for bed. *Id*. at 552, 1559. She also took care of pets, did laundry, washed dishes, vacuumed, and swept. *Id*. at 553. She drove, handled money, and went out alone. *Id*. at 554-55. She shopped in stores for groceries and household items a "few times a month for a couple hours." *Id*. She spent time with friends, and attended social groups "monthly." *Id*. at 555. She sometimes went to church. *Id*. at 1597. Her reported hobbies and interests included spending time with her daughter, drawing, reading, going for walks, camping, fishing, and "relaxing." *Id*. at 555, 1597. In addition to caring for her daughter, she was attempting to become her nephew's guardian. Prior to December 2017, she lived independently in a house with her daughter and shared custody with her ex-husband. *Id*. at 1577. During her

2020 hearing, she testified she drove 80 miles round trip to attend mandated group therapy sessions three days a week and resided with her fiancé, his parents, and her daughter.  *Id*. at 2264.

The ALJ also considered the opinion evidence.  In June 2016, state agency psychologist J. Alpert, Ph.D., determined Plaintiff has moderate difficulties maintaining social functioning and moderate difficulties in concentrating, persisting or pace.  *Id*. at 423.[3]

In 2020, state agency psychologists C. Walker, Ph.D., and H. Ferrin, Ph.D., determined Plaintiff has mild limitations interacting with others and moderate limitations in the other three broad areas of functioning.  *Id*. at 1503, 1521, 1538, 1553.

In February 2020, Dennis Noia, Ph.D., consultatively examined Plaintiff and similarly concluded Plaintiff has no more than moderate work-related mental limitations.  *Id*. at 2038-39. On examination, Plaintiff's demeanor and responsiveness to questions was cooperative, her manner of relating, social skills, and overall presentation were adequate.  *Id*. at 2038.  She was dressed appropriately and displayed "good" personal hygiene and grooming.  *Id*.  She made appropriate eye contact and exhibited normal posture and behavior.  *Id*.  Plaintiff demonstrated adequate expressive and receptive language skills.  *Id*.  Regarding her mood, Plaintiff reported feeling anxious.  *Id*.  She appeared tense and apprehensive and her affect was constricted.  *Id*. Her thought processes were coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking.  *Id*.  Her attention and concentrating were intact.  *Id*.  She was able to do counting, simple calculations, and serials 7s.  *Id*.  Her recent and remote memory skills were mildly impaired, she was able to recall three objects immediately and two after five

---

[3]  Dr. Alpert also concluded Plaintiff has no restriction of activities of daily living, however, as the ALJ discussed, changes to the mental Listings made this functional category obsolete.  (T. at 417, 430, 1364.)

minutes, and restate four digits forward and three digits backward. *Id*. Plaintiff's intellectual functioning appeared to be in the average range, and her insight and judgment were assessed as good. *Id*.

The ALJ further considered Plaintiff's treatment records with Dr. Frank, which repeatedly reflected she was cooperative with normal cognition and a logical thought process, and had intact memory, judgment, insight, attention, and concentration. *See id*. at 640, 644, 659, 807, 814, 818, 824, 832, 835, 838, 1026, 1046, 1055, 1068, 1074, 1077, 1081, 1084, 1087, 1214, 1813, 1943, 1946, 1950, 1957, 1968, 2123, 2127, 2145; *but see id*. at 1006 (impaired concentration). The ALJ also discussed Dr. Frank's four medical opinions and found they were unsupported by his own progress notes and inconsistent with Plaintiff's activities, other mental status exams, and other medical opinions of record. *Id*. at 1364.

The foregoing record evidence supports the ALJ's "paragraph B" and "paragraph C" findings. *See Beau M. v. Comm'r of Soc. Sec.*, No. 8:18-CV-1170 (ATB), 2020 WL 586868, at *5 (N.D.N.Y. Feb. 6, 2020) (finding substantial evidence consisting of plaintiff's testimony, intact daily activities, observations from his physicians, and consultative examination results supported ALJ's paragraph B analysis of no more than moderate limitation in any domain); *Gabriel C. v. Comm'r of Soc. Sec.*, No. 6:18-CV-671 (ATB), 2019 WL 4466983, at *8 (N.D.N.Y. Sept. 18, 2019) (finding "no reasonable fact finder could have found that plaintiff had marginal adjustment" as examinations showed largely intact functioning, plaintiff had never "been hospitalized for a mental episode," and he could complete daily activities, like attend college classes, drive a vehicle, "prepare simple meals, socialize with a few close friends," and "care for his cat").

Plaintiff argues she meets Listings 12.04, 12.06, and 12.15 based on the opinions of Dr. Frank.  (Dkt. No. 14 at 26-31.)  Plaintiff's argument is largely conclusory and the majority of her briefing on this issue summarizes Dr. Frank's multiple opinions and restates the paragraph B criteria without applying it to the facts of her claim.  (Dkt. No. 14 at 26-31.)  At best, Plaintiff challenges the ALJ's decision not to fully adopt certain marked or extreme limitations assessed by Dr. Frank in 2018 and 2020.  *Id.* at 26 ("The ALJ erred by not giving sufficient weight to the opinions of the treating board-certified psychiatrist that [Plaintiff] was unable to work.  Based on Dr. Frank's well-supported opinions, she is disabled under the mental health Listings.").  That argument is discussed in greater detail below.

To be sure, as the Commissioner acknowledges, if the ALJ were to adopt outright Dr. Frank's February 2018 opinion (assessing extreme limitations in every area of functioning) or his October 2020 opinion (assessing marked or extreme limitations in most areas of functioning), this would result in a finding that Plaintiff met a Listing.  (Dkt. No. 22 at 16-17; T. at 1105-06, 2239-45.)  But as the ALJ explained throughout his step three analysis and later in the RFC discussion, there was conflicting evidence in the record suggesting Plaintiff was not so limited.  (T. at 1360-72.)  Ultimately, "[t]he ALJ was well within his duty to reconcile the conflicting evidence and determine that the plaintiff's impairments, or combination of impairments, did not meet or equal a listing."  *Richard B. v. Comm'r of Soc. Sec.*, No. 20-CV-0585, 2021 WL 4316908, at *5 (W.D.N.Y. Sept. 23, 2021).  Although Plaintiff claims she is "disabled based on the well-supported opinions of Dr. Frank," it is not the Court's role to reweigh the evidence supporting the ALJ's contrary determination.  *See Boffoli v. Comm'r of Soc. Sec.*, 20-CV-5317, 2022 WL 973754, at *9 (S.D.N.Y. Mar. 31, 2022) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve, and the deferential standard of review prevents us from

reweighing it."); *see Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.").

Accordingly, the ALJ's thorough analysis and explanation of Plaintiff's impairments at step three indicate sufficient consideration of her mental impairments in relation to the Listings, and his findings are thus supported by substantial evidence.  As such, remand is not required on this basis.

**B.** **Substantial Evidence Supports the ALJ's RFC Determination at Step Four**

**1. Legal Standards**

A claimant's RFC is the most he or she can do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id*. (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

The regulations mandate procedures an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion.[4]  The Second Circuit has articulated the procedure as a two-part analysis.  *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  First, the ALJ must decide whether the opinion is entitled to controlling weight.  *Id.*  "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)); *see, e.g.*, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (holding "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts").

Second, if the ALJ decides the opinion is not entitled to controlling weight, he must determine how much weight, if any, to give it.  *Estrella*, 925 F.3d at 95.  In doing so, the ALJ must "explicitly consider" the following, nonexclusive "*Burgess* factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))).  In *Estrella*, the court emphasizes the importance of a treating source's opinion in cases concerning mental impairments, as "cycles of improvement and debilitating symptoms [of mental illness] are a

---

[4]  The agency has since adopted regulations that eliminated the treating physician rule for claims filed after March 27, 2017.  *See* 20 C.F.R. §§ 404.1527, 416.927.  Because Plaintiff filed her applications on April 4, 2016, the treating physician rule applies.

common occurrence." *Estrella*, 925 F.3d at 97 (quoting *Garrison v. Colvin*, 759 F. 3d 995, 1017 (9th Cir. 2014)).

At both steps, the ALJ must give "good reasons" for the weight given to a treating physician's opinion. *Id*. at 96 (quoting *Halloran*, 362 F.3d at 32).  An ALJ's failure to "explicitly" apply the *Burgess* factors when assigning weight to a treating physician's opinion is a procedural error. *Id*. (citing *Selian*, 708 F.3d at 419-20).  However, if "a searching review of the record" assures the court "that the substance of the treating physician rule was not traversed," the court will nonetheless affirm. *See id*. (citing *Halloran*, 362 F.3d at 32).

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  "The ALJ must "'carefully consider'" all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at \*9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term.  SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[5]  The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective

---

[5]  The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character."  SSR 16-3p, 81 FR at 14167.  The Court will remain consistent with the terms as used by the Commissioner.

medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'"  *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### 2.  Application

Plaintiff argues the RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate Dr. Frank's opinions, erred in crediting Plaintiff's testimony about her activities but not her limitations, and did not consider the "combined effects" of all of her severe impairments.  (Dkt. No. 14 at 26-35; Dkt. No. 25 at 7-9.)

### a. Dr. Frank's Opinions

In April 2017, Dr. Frank completed an employability assessment form and indicated Plaintiff had been diagnosed with bipolar disorder and PTSD and was very limited in understanding, remembering, and carrying out instructions; maintaining attention and concentration; maintaining socially appropriate behavior without exhibiting behavioral extremes; and functioning in a work setting at a consistent pace.  (T. at 801-02.)  He indicated she was moderately limited in making simple decisions; interacting appropriately with others; and maintaining basic standards of personal hygiene and grooming.  *Id*. at 802.  When asked to identify specific limitations on work activities, Dr. Frank wrote: "unable to work in any capacity."  *Id*.

In January 2018, Dr. Frank completed the same employability form and indicated Plaintiff was moderately limited in understanding, remembering, and carrying out instructions (as opposed to very limited); moderately limited in carrying out instruction (as opposed to very limited); and was very limited in interacting with others (as opposed to moderately limited).  *Id*. at 897-98.  He again wrote "unable to work in any capacity."  *Id*. at 898.

In a February 2018 medical source statement, Dr. Frank opined Plaintiff has extreme limitations in every enumerated area of functioning, including understanding; remembering simple instructions; carrying out simple instructions; making judgments on simple work-related decisions; understanding and carrying out complex instructions; making complex decisions; interacting appropriately with the public, co-workers, or supervisors; and responding appropriately to usual work situations and changes in a routine work setting.  *Id*. at 1104-06.  He wrote she has "severe concentration problems, sleep disturbance, [and] poor stress tolerance."  *Id*. at 1104.

In an October 2020 mental impairment questionnaire, Dr. Frank indicated Plaintiff has limited but satisfactory ability to remember work-like procedures; understand, remember, and carry out very short and simple instructions; understand and remember (but not carry out) detailed instructions; adhere to basic standards of neatness and cleanliness; travel in unfamiliar places; and use public transportation. *Id*. at 2241-42. He opined she was seriously limited in the ability to make simple work-related decisions and unable to meet competitive standards in sustaining an ordinary routine without special supervision. *Id*. Dr. Frank also opined she had "no useful ability to function" in maintaining attention for a two-hour segment; maintaining regular attendance; working in coordination with others; completing a workday without interruptions from psychological symptoms; performing at a reasonable pace; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers; responding to changes in a work setting; and dealing with normal work stress. *Id*. at 2242.

Within the same questionnaire, Dr. Frank opined Plaintiff has moderate limitations understanding and remembering information; marked limitations persisting and maintaining pace; extreme limitations applying information, interacting with others, and concentrating; and extreme limitations adapting and managing oneself in the workplace. *Id*. at 2243. He wrote she "would not be able to complete a workday due to stress." *Id*. at 2242. Finally, he indicated Plaintiff would be absent from work more than four days per month and off task more than 25% of the workday. *Id*. at 2244.

Contrary to Plaintiff's assertion, the ALJ applied the appropriate legal standard at this step of the sequential evaluation and provided "good reasons" for affording Dr. Frank's opinions "some limited weight, but not controlling weight." *Id*. at 1371. As detailed above, the ALJ

explained that although Dr. Frank is Plaintiff's psychiatrist, his opinions were not supported by, and were inconsistent with, other evidence in the record: specifically, his own progress notes (reflecting Plaintiff was cooperative, with normal cognition and a logical thought process, and had intact memory, judgment, insight, attention, and concertation); Plaintiff's wide range of daily activities, other mental status examinations, and other medical opinions of record. *Id.* at 1371. The ALJ also noted that in addition to being inconsistent with one another,[6] the assessments were primarily check-box forms and contained few, if any, supporting clinical or diagnostic findings. *Id.*

Where, as here, a treating physician's opinion is "internally inconsistent and inconsistent with other substantial record evidence," an ALJ can properly decline to accord it controlling weight. *Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012); *see also Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007)); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record"). That a doctor's opinion is in conflict with his or her own clinical notes is a factor that can amount to "good reasons" for attributing limited weight.[7] *See Camille v. Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016); *see, e.g.*, *Thomas B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-508 (FJS), 2022 WL 4465309, at *12

---

[6] The Court finds no merit to Plaintiff's statement that "Dr. Frank's reports to DSS, SSA, and the ALJ are all consistent with one each other." (Dkt. No. 14 at 31.) As detailed above, there were numerous inconsistencies, which the ALJ highlighted throughout his decision.

[7] Accordingly, the Court finds no merit to Plaintiff's assertion that "[t]he ALJ replaced the medical opinion of the long-time treating, board certified psychiatrist with his own medical opinion. The ALJ felt that Dr. Frank's opinions were not supported by his own treatment notes. This is a medical decision, rather than a legal one." (Dkt. No. 14 at 29.)

(N.D.N.Y. Sept. 26, 2022) (substantial evidence supported the ALJ's decision not to afford treating physician's opinions controlling weight because they lacked consistency and supportability in the record).

As discussed above, the three State agency psychologists who reviewed Plaintiff's claims all assessed no more than moderate limitations and Dr. Noia, who consultatively examined Plaintiff in February 2020, assessed mild to moderate limitations.  *See Herzog v. Astrue*, No. 5:11-CV-1108 (GTS), 2012 WL 5334756, at *3 (N.D.N.Y. Oct. 26, 2012) (finding that, "[w]here, as here, the treating physician's opinion is not supported by, or consistent with, other evidence in the record, the ALJ is entitled to accord that opinion less than controlling weight, and may instead rely on the opinions of consultative examiners"); *see Trimm v. Comm'r of Soc. Sec.*, No. 7:15-CV-1006 (GTS/WBC), 2016 WL 7414531, at *10 (N.D.N.Y. Dec. 2, 2016) ("Overall, the ALJ did not err in failing to afford controlling weight to the opinions of [plaintiff's treating physicians] because the opinions were inconsistent with other substantial evidence in the case record.  The opinions were not supported by the physician's own treatment notations which indicated normal mental status examinations[.]"), *report-recommendation adopted*, 2016 WL 7409060 (N.D.N.Y. Dec. 22, 2016).

Turning to Plaintiff's activities of daily living, the ALJ noted, among other thing things, Plaintiff maintained her own household for several years; did all the cooking, laundry, and general housekeeping for at least part of the relevant period; took care of her young daughter; attended activities with her daughter; did arts and crafts projects; drove 80 miles round-trip to attend her group therapy sessions threes time a week; went grocery shopping; managed her own finances; and sought to become her nephew's guardian.  *Id*. at 380, 399, 401, 551-55, 1363, 1368, 1602-03, 1837, 2075, 2286-88; *see, e.g.*, *Sharon R. v. Kijakazi*, No. 3:20-cv-902 (ATB),

2021 WL 3884257, at *7 (N.D.N.Y. Aug. 31, 20210) (finding the claimant's ability to take care of her own and her brother's households, care for two cats, pay bills, and go grocery shopping contradicted doctor's opinion that she had a marked limitation in maintaining a routine).

The ALJ also contrasted Dr. Frank's opinions regarding frequent absences and time off task with Plaintiff's attendance record, noting in addition to the foregoing activities of daily living, there was "no evidence of [Plaintiff] routinely missing or arriving late for her scheduled appointments." *Id.* at 1371; *see, e.g.*, *Sharon R.*, 2021 WL 3884257, at *7 ("The ability to sustain a routine, to leave the house and attend regular appointments is relevant to plaintiff's functional ability, even if in itself, this ability does not mean that plaintiff can perform full-time work.").

Further, a review of the ALJ's written decision demonstrates he considered all of the medical evidence in accordance with the appropriate legal standards and made reasonable determinations supported by substantial evidence. *See Micheli v. Astrue*, 501 F. App'x at 29.  It is ultimately the ALJ's responsibility to choose between medical opinions and other evidence to piece together an overall assessment, and a mechanical recitation of the weighing criteria found in the Regulations is unnecessary as long as the record reflects that he properly applied the substance of those rules. *See, e.g.*, *Suarez v. Colvin*, 102 F. Supp. 3d 552, 574 (S.D.N.Y. 2015). Here, the ALJ engaged in a thorough, narrative discussion of the extensive record before discussing the reasoning behind his assignment of weight to the medical sources in the record. *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (holding that "the opinions of non-examining sources [can] override treating source's opinions provided they are supported by evidence in the record"); *accord Suttles v. Colvin*, 654 F. App'x 44, 46 (2d Cir. 2016) (summary

order) (holding that it was not erroneous for the ALJ to give great weight to consultative examiner's opinion because it was consistent with record evidence).

Accordingly, the Court finds the ALJ articulated sufficiently good reasons for affording Dr. Frank's multiple opinions less than controlling weight.[8]  The ALJ was responsible for reviewing all of the medical and other evidence before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole.  (Dkt. No. 14 at 29-31.)  *See Bliss v. Colvin*, No.13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, No. 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014); *see also Vincent F. v. Comm'r of Soc. Sec.*, No. 1:17-cv-446 (TWD), 2018 WL 4471525, at *7 (N.D.N.Y. Sept. 18, 2018) (finding that ALJ properly contrasted medical opinion with other evidence).  "In general, under the substantial evidence standard of review, it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position . . . plaintiff must [instead] show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record."  *Jonathan S. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1177, 2022 WL 44700 *6 (W.D.N.Y. Jan. 5, 2022).  In this case, Plaintiff has not made such a showing.

---

[8]  As to Dr. Frank's various statements that Plaintiff was unable to work (T. at 802, 898), as the ALJ noted, such statements concern an issue reserved to the Commissioner, and do not warrant any particular weight.  *Id*. at 1371-72; *see* 20 C.F.R. §§ 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), (3) ("We will not give any special significance to [such statements]."), 416.927(d)(1), (3).

Plaintiff maintains the ALJ had an obligation to contact Dr. Frank for an "explanation of his opinions" before "discrediting" his medical opinions.  (Dkt. No. 14 at 31; Dkt. No. 25 at 5-7.) However, there is no obligation to recontact a treating physician where the evidence of record is "adequate to permit the ALJ to make a disability determination."  *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010) (citing *Perez v. Chater*, 77 F.3d 41, 47-48 (2d Cir. 1996)); *see also John Q. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1249, 2021 WL 1578297, at *10 (W.D.N.Y. Apr. 22, 2021) ("the ALJ is under no duty to obtain additional evidence from a treating source or ask for clarification when declining to give controlling weight to a treating source's opinion."); *see, e.g.*, *Teresa L. v. Comm'r of Soc. Sec.*, No. 1:19-CV-682, 2020 WL 6875254, at *7 (W.D.N.Y. Nov. 23, 2020) (ALJ did not err "in failing to contact [treating physician] for a clarification of inconsistencies in his opinion and elaboration in the parts of the opinion that were not supported").  The ALJ's decision does not indicate he did not have sufficient evidence to determine whether Plaintiff was disabled and his reasonable explanations that Dr. Frank's opinions were not supported by and continent with the record did not require him to recontact Dr. Frank for further information.  (T. at 1365-72.)

In light of the foregoing, the ALJ's decision demonstrates appropriate consideration of Dr. Frank's opinions considering his own treatment notes, the longitudinal medical record, and Plaintiff's own assessment of her abilities, as reflected in her hearing testimony.  *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (finding the ALJ properly considered treating source opinion where the opined limitations were inconsistent with the doctor's own treatment notes and plaintiff's self-reported activities of daily living); *Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (finding no error where ALJ discounted treating source opinion that was inconsistent with treatment notes, other medical opinion evidence, and reported

activities).  In short, the Court does not find any reversible error in the ALJ's evaluation of Dr.
Frank's medical opinions.  As such, remand is not required on this basis.

### b.  Combination of Impairments and Evaluation of Symptoms

Plaintiff argues she is disabled by the combination of her physical and mental
impairments and she does not have the RFC to perform any work.  (Dkt. No. 14 at 32-35.)  To
that end, Plaintiff claims the ALJ "did not include limitations from her chronic pain from
fibromyalgia and inflammatory arthritis, her fatigue from insomnia, her migraine headaches, her
limitations in using her hands from carpal tunnel, Reynaud's and arthritis.  He did not include her
non-exertional limitations caused by her severe mental illness." *Id*. at 34-35.  Plaintiff also
maintains the ALJ erred in only crediting her testimony about her activities, but not about her
limitations.  (Dkt. No. 25 at 7-9.)  For reasons discussed herein, substantial evidence supports the
ALJ's determination that Plaintiff has the RFC to perform a range of light, unskilled, low stress-
work.

First, the Court's review of the record does not support these arguments or that the ALJ
failed to properly consider Plaintiff's impairments in combination.  As Defendant maintains, the
ALJ properly considered Plaintiff's impairments in combination throughout the sequential
evaluation.  (Dkt. No. 22 at 18-25; T. at 1365-72.)  Second, as detailed below, Plaintiff's
conclusory assertion that the ALJ did not adequately evaluate various specific impairments
and/or account for them in the RFC is without merit.  (Dkt. No. 14 at 32-35.)  Third, the ALJ
properly analyzed Plaintiff's subjective symptoms.  (T. at 1365.)  He cited the two-part standard
governing the analysis of subjective complaints.  *Id*.  He discussed Plaintiff's allegations
regarding her limitations, including the effects of medication, and any aggravating factors.  *Id*. at
1366.  Although the ALJ recognized that Plaintiff's medically determinable impairments could

cause her symptoms, he found her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  *Id*. at 1372.  Notwithstanding Plaintiff's argument, the Court finds no basis to disturb the ALJ's evaluation of her subjective complaints, which is supported by record-based explanations throughout the ALJ's written decision.  *See Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) (A court may not "second-guess" the ALJ's decision to discount a claimant's statements about her symptoms "where the ALJ identified specific record-based reasons for [her] ruling[.]").  "It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms."  *Chicocki v. Astrue*, 534 F. App'x. 71, 75 (2d Cir. 2013) (quotation omitted).

As to Plaintiff's chronic pain from fibromyalgia and inflammatory arthritis, the ALJ reviewed Plaintiff's subjective complaints limiting her ability to lift, stand, walk, sit, kneel, and use her hands and considered her testimony that she had "constant pain" in her "whole body" but never in [the] same spot."  (T. at 1366, 1445-46, 2278-79)  During the 2020 hearing, she rated her pain as six or seven out of ten.  *Id*. at 2279.  In addition to prescribed medications, which helped "somewhat", Plaintiff reported massage, heating pads, hot showers, Bengay, and medical marijuana helped alleviate her pain.  *Id*. at 2280-81.  She further testified she could only walk for ten minutes before her knees would "burn and ache", stand for fifteen minutes before needing to move around and sit down, and sit for fifteen to twenty minutes before needing to adjust because of pain in her back, hips, and knees.  *Id*. at 2281.  She reported having problems paying attention, concentrating, completing tasks, remembering things, handling stress or schedule changes, and getting along with other people including authority figures.  *Id*. at 2284.  ALJ also considered her

daily activities such as doing housework, driving, taking care of her daughter, and walking for exercise (up to a mile at a time). *Id*. at 1367-69, 399, 401, 551-55, 1988, 1991, 1995, 1997-98, 2000, 2022-25, 2053, 2057, 2062, 2070, 2173, 2176, 2179.  In March 2017, Plaintiff told rheumatologist, Eyal Kadar M.D., her pain was "better with activity" and that it was responding to medication. *Id*. at 697, 1367.

In formulating the physical RFC, the ALJ discussed and relied on the opinions of consultative examiners, Kalyani Ganesh, M.D., and Elke Lorensen, M.D.  *Id*. at 1366-67.  In May 2016, Dr. Ganesh examined Plaintiff and noted she "has fibromyalgia.  She has pain in the whole body.  She is on medication.  It seems to help." *Id*. at 647.  On examination, Dr. Ganesh observed no abnormalities other than difficulty squatting and some limitation of motion of the lumbar spine.  *Id*. at 647-48.  Plaintiff appeared in no acute distress, her gait was normal, she could walk on heels and toes without difficulty, her stance was normal, she used no assistive devices, and she needed no help changing for the examination or getting on and off the exam table.  *Id*. at 648.  Plaintiff was able to rise from a chair without difficulty.  *Id*.  She had decreased range of motion in her lumbar spine but negative straight leg raising bilaterally.  *Id*. at 649.  She demonstrated full range of motion in her cervical spine, shoulders, elbows, forearms, wrists, hips, knees, and ankles.  *Id*.  All of her joints were stable and without tenderness, redness, heat, swelling, or effusion.  *Id*.  There were no tender points and no control points.  *Id*.  She had no muscle atrophy or sensory deficits.  *Id*.  She demonstrated 5/5 strength throughout all four extremities.  She had intact hand and finger dexterity bilaterally.  *Id*.  Spinal x-rays from 2016 were negative except for a transitional L5 vertebral body and straightening in her cervical spine. *Id*. at 651-52.  Dr. Ganesh assessed no gross physical limitations sitting, standing, or walking, and mild limitations lifting, carrying, pushing, and pulling.  *Id*. at 650.

Dr. Lorensen examined Plaintiff in February 2020.  *Id*. at 2074.  She observed six trigger points, some difficulty squatting, and somewhat limited range of motion.  *Id*. at 2074-76.  During the examination, Plaintiff appeared in no acute distress and had a normal gait and stance.  *Id*. at 2074.  She used no assistive devices and had no difficulty walking on her heels and toes.  She needed no help changing for the examination or getting on and off the exam table.  She rose from a chair without difficulty.  She had full range of motion in her cervical spine, elbows, forearms, wrists, and ankles.  Her joints were stable and nontender with no redness, heat, swelling, or effusion.  She had no muscle atrophy or sensory deficits, and demonstrated 5/5 strength in her upper and lower extremities.  She also had 5/5 grip strength bilaterally with intact hand and finger dexterity.  X-rays of her lumbar spine showed "spina bifida occulta of L5, a normal variant."  *Id*.  There was no fracture, dislocation, or significant degenerative change.  *Id*.  Dr. Lorensen concluded Plaintiff had no gross limitations for sitting, standing, walking, or handling small objects with her hands, and mild limitations for bending, lifting, and reaching.  *Id*.

The ALJ also relied, in part, on the State agency reviewing physician's physical assessments.  *Id*. at 1366-67.  In March 2020, Dr. J. Rosenthal reviewed the record and concluded Plaintiff's fibromyalgia and "spine disorder" were severe impairments, but she retained the ability to perform light work with certain postural and environmental limitations.  *Id*. at 1540-42.  In August 2020, Dr. M. Vazequez Gonzales reviewed an updated record and concurred with Dr. Rosenthal's assessment.  *Id*. at 1502, 1506-06.

The ALJ afforded all of these opinions some weight because Dr. Ganesh's and Dr. Lorensen's opinions were supported by their examinations and Dr. Rosenthal's and Dr. Vazquez Gonzalez's opinions were supported by the narrative explanations and consistent with the record.  *Id*. at 1367.

As discussed above, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability.  *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, No. 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

Additionally, the ALJ included greater physical and mental limitations in the RFC than the state agency physicians opined on account of Plaintiff's testimony concerning her pain and fatigue and "physical exams that have noted multiple positive tender points" including the March 23, 2017, examination by rheumatologist, Eyal Kedar, M.D.  *Id*. at 696, 1368, 1370.  The ALJ further found the "pain and fatigue from [Plaintiff's] headaches, fibromyalgia, and other physical impairments could reasonably be expected to impose some mental limitations."  *Id*.  As such, the Court finds no merit to Plaintiff's statement the ALJ "erred, and violated the remand order by not considering the exertional and non-exertional effects of her fibromyalgia on her RFC."  (Dkt. No. 14 at 33.)

Insofar as Plaintiff argues the evidence supports her assertion of greater limitations, *i.e.*, "her many limitations from fibromyalgia prevent her from performing any work", (Dkt. No. 14 at 34), under the substantial evidence standard it is not enough for Plaintiff to merely argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusion based on the evidence in the record.  *See*

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin*, 967 F. Supp. 2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position). In this case, Plaintiff has not made such a showing.

The ALJ also considered Plaintiff's testimony that she slept poorly, felt tired, was stiff and irritable during the day, napped frequently, and some of her medications caused drowsiness when formulating her RFC. *Id*. at 1362, 1370. However, the ALJ also addressed Plaintiff's wide variety of daily activities despite her fatigue. *Id.* at 1367-68. As the Commissioner points out, the ALJ accounted for Plaintiff's "pain and fatigue" by assessing greater physical and mental limitations than the state agency physicians assessed. (Dkt. No. 22 at 21; T. at 1370.)

The ALJ discussed Plaintiff's migraine headaches and their effect on Plaintiff's ability to perform tasks. (T. at 1360, 1366.) Specifically, the ALJ considered Plaintiff's testimony that she had migraines several times a week, lasting from a few hours up to two days, and that medication "sometimes" helped. *Id*. at 1366, 2288-90. In November 2016, it was noted Topamax made her headaches "much more manageable" and returned only "sporadically." *Id*. at 749; *see also id*. at 647, 701, 790, 797, 799, 858, 1050, 2000, 2074 (other reports of positive response to medications). In August 2020, she reported having only two to three headaches per month, which were controlled with sumatriptan injections. *Id*. at 2103. Additionally, as the ALJ noted, neurological exams were largely unremarkable (*id*. at 347, 714, 737, 747, 758, 886, 870, 894, 999, 2010, 2017-18, 2026, 2076-77, 2107-08, 2114-15), and on a number of occasions she denied having headaches. *Id*. at 734, 755, 867, 890, 996, 1996, 2009, 2016. The ALJ also considered Plaintiff's testimony that while she is having a headache, she is sensitive to sounds and smells, sometimes loses vision, and needs "quiet" and sleep. *Id*. at 1366. In formulating

Plaintiff's RFC, the ALJ explicitly accounted for Plaintiff's migraine headaches by restricting her exposure to light and noise and limiting her to simple work.  (T. at 1360, 1365, 1368.)

As to her hand impairments, variously characterized, the ALJ found that while Plaintiff fractured her left wrist while rollerblading in April 2019, has a history of bilateral carpal tunnel syndrome, and underwent a left-sided release in March 2014, these conditions imposed no more than minimal limitations on her ability to perform basic work activities.  *Id*. at 1360, 1928, 1934-35, 2022, 2035.  To that end, in his severity analysis, the ALJ discussed that during the consultative examinations conducted by Dr. Ganesh and Dr. Lorensen Plaintiff demonstrated full grip strength, intact hand and finger dexterity, and full range of motion and intact sensation throughout both upper extremities.  *Id*. at 649, 1360, 2076-77.  Dr. Lorensen also observed Plaintiff "has no problem doing fine motor activities with her hands and filled out her paperwork with very neat, meticulous handwriting."  *Id*. at 2074-78.  Additionally, the state agency reviewing physicians did not assess any manipulative limitations.  *Id*. at 1506, 1541.

The ALJ also discussed Plaintiff's hand impairments when formulating the RFC findings. In particular, he considered Plaintiff's testimony that she had difficulty moving her hands, could not write for long because they got stiff, and had difficulty holding things because her medications made her hands shake.  *Id*. at 1366, *see id*. at 1436-37, 2280.  However, he also noted evidence reflecting Plaintiff could bathe, dress, and groom herself; prepare food; do general cleaning and laundry; and take care of her daughter.  *Id*. at 1368, *see id*. at 399, 551-55, 648, 2075.  The ALJ explicitly accounted for Plaintiff's hands by finding her capable of frequently reaching, handling, fingering, and feeling with her upper extremities.  *Id*. at 1368.

There is no merit to Plaintiff's assertion that the ALJ "did not include her non-exertional limitations caused by her severe mental illness."  (Dkt. No. 14 at 32.)  The ALJ included multiple

mental limitations to account for Plaintiff's various psychiatric impairments and any mental limitations imposed by her pain, fatigue, headaches, traumatic brain injury, and other physical impairments by limiting her to handling only simple instructions and tasks; making simple decisions; not working at a production-rate pace; only occasionally interacting with co-workers, supervisors, and the public; tolerating only occasional changes in the work setting; and tolerating low levels of work pressure.  (T. at 1365, 1371.)  In doing so, the ALJ considered the entire record including opinions from Dr. Frank, Dr. Noia, Dr. Alpert, Dr. Walker, and Dr. Ferrin.  The ALJ assigned some weight to the opinions of Dr. Noia, Dr. Alpert, Dr. Walker, and Dr. Ferrin, discussed above, finding them consistent with each other and supported by the evidence of record.  (T. at 1370.)  *See* 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4).  Substantial evidence supports the ALJ's evaluation and weighing of the opinion evidence including Dr. Frank's opinions, discussed above, and the ALJ's determination that Plaintiff has no more than moderate work-related mental limitations.  (T. at 1365-72.)

Furthermore, as a general matter, moderate limitations are not an impediment to the ability to perform gainful activity, particularly when an RFC has already limited a claimant to unskilled and/or low-stress work.  *See Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *see Ridley G. v. Comm'r of Soc. Sec.*, No. 20-cv-773, 2021 WL 4307507, at *5, 8-9 (N.D.N.Y. Sept. 22, 2021) (upholding RFC for low-stress work where unremarkable examination findings, opinion evidence, and the plaintiff's ability to perform various activities supported no more than moderate mental limitations); *see also Melisa G. v. Berryhill*, No. 3:18-CV-508 (DJS), 2019 WL

2502726, at *5 (N.D.N.Y. June 17, 2019) (holding moderate limitations are not prohibitive of

performing unskilled work); *see, e.g.*, *see also Tamara M. v. Saul*, No. 3:19-CV-1138 (CFH),

2021 WL 1198359, at *11 (N.D.N.Y. Mar. 30, 2021) (finding no error by ALJ in declining to

include limitations to being off-task and/or attendance in RFC determination, where substantial

evidence supported the ALJ's assignment of weight and rejection of treating physician's

restrictive limitations).

   In sum, as the ALJ reviewed the subjective and objective information in the record

relating to Plaintiff's both severe and non-severe impairments including fibromyalgia,

inflammatory arthritis, chronic pain, fatigue, migraine headaches, hand impairments, and mental

health limitations, the resulting symptoms, and medical opinions related thereto from across the

relevant time period, remand is not warranted.  *See, e.g.*, *Anysha M. v. Comm'r of Soc. Sec.*, No.

3:19-CV-0271 (CFH), 2020 WL 1955326, at *5 (N.D.N.Y. Apr. 23, 2020) ("The ALJ's

references to fibromyalgia and chronic widespread pain throughout her RFC analysis indicate

that she properly considered [the plaintiff's] fibromyalgia in determining [her] physical

limitations that are supported by the evidence of record.").

   Plaintiff's challenge regarding the ALJ's RFC determination appears premised upon a

disagreement over how the ALJ weighed evidence about Plaintiff's limitations.  However, as

discussed above, this Court will not reweigh the evidence presented to the ALJ.  *See Warren v.*

*Comm'r of Soc. Sec.*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov.

18, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of

the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human*

*Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)); *Gogos v. Comm'r of Soc. Sec.*, No. 18-CV-1188, 2020

WL 128445, at *3 (W.D.N.Y. Jan. 10, 2020) ("It is the ALJ's job to resolve conflicting record evidence and the Court must defer to that resolution.").

Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those portions of the medical opinions deemed most consistent with Plaintiff's overall treatment record and activities.  In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding consistent with the overall record.  *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all the evidence available to make an RFC finding consistent with the record as a whole).

Based on the foregoing, the Court finds the ALJ properly applied correct legal standards and the RFC determination was supported by substantial evidence.  Accordingly, remand is not required on this basis.

## VI.    CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court finds the ALJ properly applied the correct legal standards and considered the evidence of record.  The ALJ's findings are supported by substantial evidence.  Accordingly, the Court finds no error.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules; and it is further

**ORDERED** the Clerk of Court shall enter Judgment and close this case.

Dated:  December 15, 2022
          Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge